NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JIMMIE KLATT,
*Plaintiff/Appellee*,

*v.*

SUNBIRD GOLF RESORT HOMEOWNERS ASSOCIATION INC,
*Defendant/Appellant*.

No. 1 CA-CV 25-0709

FILED 06-11-2026

Appeal from the Superior Court in Maricopa County
No. CV2023-053589
The Honorable Michael D. Gordon, Judge, *Retired*

**AFFIRMED**

COUNSEL

Gordon Rees Scully Mansukhani, LLP, Phoenix
By Gaurav Bobby Kalra, Christine B. Stutz
*Counsel for Defendant/Appellant*

Dessaules Law Group, Phoenix
By Jonathan A. Dessaules, Jacob A. Kubert
*Counsel for Plaintiff/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Veronika Fabian and Chief Judge Randall M. Howe joined.

_____

**B R O W N**, Judge:

¶1          SunBird Golf Resort Homeowners' Association, Inc. ("Association") appeals the superior court's judgment in favor of Jimmie Klatt ("Klatt"), a member of the Association. For the following reasons, we affirm.

## BACKGROUND

¶2          The Association manages the SunBird active living community ("SunBird"), which is age-restricted (55 and older) and consists of about 1,600 homes. Many of the homes are located near the separately owned SunBird Golf Course ("Golf Course"). In 1999, several homeowners' associations throughout SunBird joined and adopted covenants, conditions, and restrictions ("1999 CC&Rs") to create the Association. Each lot owner within SunBird must be a member of the Association. As pertinent here, the 1999 CC&Rs stated that the Golf Course "does not constitute [a] common area of the Association."

¶3          When Klatt bought a home in SunBird in 2018, his lot became subject to an amended version of the CC&Rs that were adopted in 2015 ("2015 CC&Rs"). Subsection 9.2 of the 2015 CC&Rs stated in part:

> Operation. Neither the Association or its members shall be responsible for the costs and expenses incurred in the operation and maintenance of the [G]olf [C]ourse, driving range and related golf operation (except for the payment of membership fees, green fees, user fees and other related golf fees).

Section 6.3(A) of the 2015 CC&Rs specifically excluded the Golf Course from the list of common areas and expenses for which the members would be responsible.

¶4          In 2021, a majority of SunBird owners approved three amendments to the 2015 CC&Rs (together the "Amendment"). In short, the

Amendment establishes a fund to maintain, repair, replace, or improve the common areas or other areas affecting the Association, *including the Golf Course*. The Amendment applies only to individuals who become owners of SunBird lots after the adoption of the Amendment and requires those new owners to pay a capital improvement assessment ("Assessment") of $300.

**¶5** In September 2023, Klatt sued the Association, seeking a declaratory judgment and an injunction. Klatt asserted that under the 2015 CC&Rs, "the owners owe absolutely no financial obligation whatsoever" to the Golf Course. Klatt alleged the Amendment affects his home's marketability by requiring purchasers to pay "a transfer fee used to financially support the [G]olf [C]ourse." Klatt also claimed the Amendment violates *Kalway v. Calabria Ranch HOA, LLC*, 252 Ariz. 532 (2022), "because the 2015 CC&Rs d[id] not make it reasonably foreseeable" that the Association could change the prohibition against providing financial support to the Golf Course. *See id.* at 537–38, ¶ 10 (explaining that a declaration of restrictive covenants "must give sufficient notice of the possibility of a future amendment; that is, amendments must be reasonable and foreseeable"); *infra* ¶¶ 13–16.

**¶6** After the parties filed several motions, the superior court entered summary judgment for Klatt, applying *Kalway* and determining the Amendment was not foreseeable. The court later entered a final judgment declaring the Amendment "void, invalid and of no force and effect" and awarding Klatt attorneys' fees plus costs. The Association timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶7** Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review questions of law, including a grant of summary judgment de novo. *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (1994).

### A. Standing and Justiciable Controversy

**¶8** The Association argues Klatt lacked standing to file a declaratory judgment contesting the Amendment, asserting he did not raise a justiciable issue because he is not required to pay the Assessment and any damage to the marketability of his home is "theoretical." "Whether a party has standing is a question of law we review *de novo*." *Pawn 1st, L.L.C. v. City of Phoenix*, 231 Ariz. 309, 311, ¶ 11 (App. 2013).

¶9        The Association did not raise standing as an issue in the superior court.  Instead, it argued Klatt did not raise a justiciable issue.  The Association has therefore waived any contention that Klatt lacks standing to seek a declaratory judgment against the Association.  *See Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000) (explaining that failure to raise an issue before the superior court can result in waiver on appeal).  Even without waiver, the Association's argument fails.

¶10       To assess standing, Arizona courts "exercise restraint to ensure they refrain from issuing advisory opinions, that cases be ripe for decision and not moot, and that issues be fully developed between true adversaries."  *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 12 (2021) (citation and quotation omitted).  In determining standing, we assume that Klatt is "correct on the merits, although that is not a binding or even preliminary determination."  *Montenegro v. Fontes*, ___ Ariz. ___, ___, ¶ 19, 576 P.3d 692, 697 (2025) (citation omitted).  Because the Arizona Constitution does not have a case or controversy requirement "standing is a prudential consideration rather than a mandatory prerequisite to suit."  *Id*. at ¶ 18.

¶11       The declaratory judgment statute authorizes "[a]ny person interested under a . . . written contract" to "have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."   A.R.S. § 12-1832.  Klatt has a contractual relationship with the Association, arising from the 2015 CC&Rs, and the Association cites no authority suggesting that a lot owner lacks standing to challenge the validity of CC&Rs amendments.  *See Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000) (CC&Rs "constitute a contract between the subdivision's property owners as a whole and individual lot owners.").  Thus, the Association's argument that Klatt lacks standing fails.

¶12       As for the Association's assertion that Klatt did not raise a justiciable controversy, we disagree.  Klatt sought a judgment declaring the Amendment unenforceable.   And he asserts a right to protect the marketability of his property because the Amendment imposes the Assessment upon the sale of his home.  Klatt also points to the Association's new responsibility to maintain, repair, replace, and improve the Golf Course, which conflicts with the 2015 CC&Rs.

¶13       A justiciable controversy exists if there is "an assertion of a right, status, or legal relation in which the plaintiff has a definite interest and a denial of it by the opposing party."  *See Keggi v. Northbrook Prop.*

*& Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10 (App. 2000) (citation omitted). Klatt's interest is neither speculative nor uncertain. He purchased his property with the knowledge that the Golf Course and SunBird are separate entities and that funds from the Association would not be used to benefit the Golf Course. With the 2021 Amendment, however, his property is now subject to the Assessment and the grant of authority to the Association to use funds to benefit the Golf Course, neither of which existed when he bought his home in SunBird. *Cf. Kalway*, 252 Ariz. at 538, ¶ 15 (recognizing that "[t]he law will not subject a minority of landowners to unlimited and unexpected restrictions on the use of their land merely because the covenant agreement permitted a majority to make changes to existing covenants") (citation omitted).

¶14 The crux of the issue is that the Assessment imposed a new obligation on Klatt, effectively intertwining the Association and the Golf Course, a change he did not reasonably expect to occur under the 2015 CC&Rs. *See id.* (recognizing that "a homeowner's reasonable expectations [are] based on the declaration in effect at the time of purchase"). Thus, a justiciable controversy exists because Klatt has a "definite interest" in enforcing his contractual and legal rights, which he claims have been adversely impacted by the Association. *See Keggi*, 199 Ariz. at 45, ¶ 10.

### B. Application of *Kalway*

¶15 The Association argues the superior court erred by applying *Kalway*, asserting that case addressed CC&Rs amendments that affected the rights of existing homeowners, while the Amendment at issue effects future home purchasers. The Association's attempt to distinguish *Kalway* based on factual differences from this case is unpersuasive.

¶16 That *Kalway* did not expressly address transfer fees for new home purchasers, like the Assessment here, does not mean that *Kalway* is inapplicable. In *Kalway*, our supreme court held that homeowners' associations "cannot create new affirmative obligations where the [CC&Rs] did not provide notice to the homeowners that they might be subject to such obligations." *Kalway*, 252 Ariz. at 538, ¶ 14. The court explained that "future amendments cannot be entirely new and different in character, untethered to an original covenant. Otherwise, such an amendment would infringe on property owners' expectations of the scope of the covenants." *Id.* at 539, ¶ 17 (citations and quotations omitted). To be enforceable, CC&Rs amendments must be both reasonable and foreseeable. *Id.* at 537, ¶ 10. Because the Association has not argued the superior court erred in finding the Amendment to be unreasonable and unforeseeable, it has

waived this issue on appeal. *Schabel v. Deer Valley Unified Sch. Dist. No. 97*, 186 Ariz. 161, 167 (App. 1996) ("Issues not clearly raised and argued in a party's appellate brief are waived.").

**¶17** Waiver aside, we reject the Association's assertion that the Amendment has no legal effect on Klatt because it only applies to new lot owners. Aside from the lack of any supporting authority offered by the Association, its position is untenable. An amendment that applies only to new owners is still a restrictive covenant that affects the ability of existing owners to sell their lots. Suppose that the Association amended the CC&Rs by lifting the 55 and older age restriction or adopted a narrow short-term rental restriction, but mandated that such amendment would apply only to future owners. Nothing in *Kalway* supports concluding that existing owners would somehow be precluded from exercising their contractual rights by challenging the enforceability of such an amendment.

**¶18** Through the Amendment, the Association created new restrictions for Klatt, as well as other existing lot owners. That obligation includes the Assessment and the financial support for the Golf Course, which were not part of the 2015 CC&Rs. Because those CC&Rs plainly stated that the Association would not use its funds for expenses relating to the Golf Course, the Amendment was unforeseeable. *See Kalway*, 252 Ariz. at 538, ¶ 14. The Association has not shown the superior court erred in granting Klatt's motion for summary judgment.

**CONCLUSION**

**¶19** We affirm. Both parties request attorneys' fees and costs under A.R.S. § 12-341.01, which authorizes an award of attorneys' fees to the party who prevails on the merits in litigation arising out of contract. Because the Association has not prevailed, we deny its request. In our discretion, we grant reasonable attorneys' fees plus taxable costs to Klatt subject to his compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR